UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE SLICK,

                Plaintiff,            Case No. 07-13727
v.                                            Honorable David M. Lawson
                                                    Magistrate Judge R. Steven Whalen
ONSTED COMMUNITY SCHOOLS,

                Defendant.
_____/

**ORDER REJECTING IN PART MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION, SUSTAINING PLAINTIFF'S
OBJECTIONS IN PART, GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND REFERRING CASE FOR FURTHER CASE MANAGEMENT**

This matter is before the Court on a report filed by Magistrate Judge R. Steven Whalen recommending that the defendant's motion for summary judgment be granted. The plaintiff, who suffers from the reading disability known as dyslexia, applied for and did not receive a newly-created job with the defendant school district as a "Grounds and Repairperson." The plaintiff also had worked for the school district previously as a general maintenance worker and in the copy room. He alleges that he was fired from his job and not hired in the newly posted position because the defendant unlawfully discriminated against him on account of his disability in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Persons With Disabilities Civil Rights Act (PWDCRA), Mich. Comp. L. § 37.1101 *et seq.* The case was referred to the magistrate judge for pretrial management under 28 U.S.C. § 636(b)(1)(B). Thereafter, the defendant filed its motion for summary judgment. The magistrate judge considered the motion and recommended dismissal of the complaint. The plaintiff filed timely objections.

I.

The magistrate judge summarized the facts of the case. The plaintiff states in his objections that the magistrate judge portrayed the record in a way that favored the defendant, so the Court will review the record again here.

Plaintiff Mike Slick suffers from a lifelong learning disability that substantially impairs his ability to read and for which he received special education services throughout high school. This disability was well-documented during his high school tenure in the defendant school district. *See* Ans. to Mot. for Summ. J., Ex. A.

The plaintiff began working for the school district in 1991 while still in high school there. He claims he received this position through a placement program for individuals with disabilities, although the defendant claims that it was unaware of this program. He held a number of different temporary and seasonal positions, including groundskeeper, repairworker, and substitute nighttime custodian (one or two nights per week), on an "as needed" basis for about 15 years. He did not require accommodations for his disability in these positions. In 2005, he also worked for a short period of time in the copy room, where he informed his supervisors of his disability and received generally positive reviews. However, he did not pass the probationary period possibly due to his disability. *See* Ans. to Mot. for Summ. J., Ex. D. After this position ended in June 1, 2005, the plaintiff resumed his prior employment tasks, as well as his position on the custodial substitute list. The plaintiff generally received good reviews for his work, and his supervisors received frequent praise for his work on the grounds. *See* Mot. for Summ. J., Ex. 5, dep. of Michael Albright, at 32; Mot. for Summ. J., Ex. 4, dep. of Max Baxter, at 12; *see also* Letters of Recommendation, Ans. to Mot. for Summ. J., Ex. L. Mr. Robert Herrera, who was the district superintendent until August

2006, had a positive opinion of Mr. Slick and his work product. *See* Mot. for Summ. J., Ex. 8, dep. of Robert Herrera, at 7-8.

In the summer of 2006, the school faced a budget shortfall, and the administration decided to reduce costs by reorganizing and combining several service departments, including the one for which Mr. Slick worked. The board created a new "utility position," entitled the "Grounds/Repairperson," that combined the duties of the prior groundskeeper and repairperson positions. This job allegedly eliminated the one that Mr. Slick had performed on a temporary basis. It was posted on October 3, 2006 and listed the following qualifications:

> QUALIFICATIONS:
> 1. Must be able to perform the physical duties as required by the job including but not limited to the ability to lift 80 pounds consistently.
> 2. Must be able to climb a ladder and use a lift.
> 3. Must be able to operate power machinery.
> 4. Must have working knowledge of Onsted Schools' boilers and controls.
> 5. Must understand the repair of equipment.
> 6. Must have basic electricity knowledge.
> 7. Must know how to make roof repairs.
> 8. Must be able to get along with students, staff and public.
> 9. Must pass a physical examination and drug test given by an approved physician prior to starting work.
> 10. Must have a chauffeur's license.
> [ . . . ]
> PERFORMANCE RESPONSIBILITIES:
> 1. General care of grounds.
>     A. Keep trash picked up.
>     B. Keep grass mowed.
> 2. Athletic field preparation for competition.
> 3. Capable of maintaining grounds equipment.
> 4. Snow removal from areas under his/her care.
> 5. Knowledge of chenticals used by staff and/or contractors.
> 6. Responsible to keep the school equipment and buildings repaired.
> 7. Responsible to assist in the repair 2nd cleaning ofboiJers.
> 8. Responsible to make minor electrical repairs.
> 9. Responsible to keep the school furniture repaired.
> 10. Responsible to keep the lighting in proper working order.
> 11. Responsible to assist in cleaning the buildings and work areas.

      12. Responsible for other duties assigned by the supervisor or superintendent.

Mot. for Summ. J., Ex. 10, at 2. Though the posting listed both grounds work and repair work, the defendant's representatives testified that technical repair duties were of prime importance. Max Baxter, interim superintendent during the hiring period, testified that "actually what the district really needed was a person who could do preventative maintenance, and their plumbing, their heating, their electrical, and their building needs, that's what really needed to be hired." Mot. for Summ. J., Ex. 4, dep. of Max Baxter, at 14. Baxter also discussed the possibility of outsourcing the landscaping work, which he believed would be more cost-effective.

    The plaintiff alleges that Mr. Herrera approached him and encouraged him to apply for the position and to take a Basic Skills Test as part of this application. The defendant contends that the Basic Skills Test was not part of the application for this position and was not considered at all. The defendant maintains that the Basic Skills Test was relevant for Mr. Slick's position in the copy room, not in the maintenance department. The job posting contradicts that claim, however.

    The plaintiff took the Basic Skills Test on June 16, 2006. Before the test, he told an administrative office employee about his reading disability and his difficulty taking tests. He testified: "[S]he proceeded to tell me that day that if there's an issue with the test, [she would] let me know . . . and I can retake it.'" Mot. for Summ. J., Ex. 3, Pl.'s dep., at 51. The plaintiff was reassured that this test would have no bearing on whether he would get the job. He did not ask for further accommodations, allegedly because he believed Mr. Herrera had told co-worker Steve Thomson that a reader could not assist the plaintiff. He performed very poorly on the test, scoring below the sixth grade level. The plaintiff allegedly "did not learn that he failed the test until his co-worker Steve Thomson told him about a conversation Thomson had had with superintendent

Herrera, who told Thomson that plaintiff did not test well, and read at a first-grade level, and that according to the school attorney, would be a liability on the job." Mot. for Summ. J., Ex. 3, Pl.'s dep., at 57.

The plaintiff applied for the "Grounds/Repairperson" job. His resume stated that he had "13 years of Landscaping/lawn maintenance and Machinery operation experience" and detailed the different functions he had performed and the machinery he had operated in these roles. Mot. for Summ. J., Ex. 12, App. of Mike Slick. The plaintiff asserts that his application listed his extensive maintenance experience and his operational knowledge of light and heavy equipment. The plaintiff believed that the job would involve mainly grounds work, but include assisting Thomson with repair duties that he had performed in the past. He believed he possessed all the skills necessary for this position.

Michael Albright and Nancy Sudak reviewed the resumes and selected six candidates for interviews, one of whom withdrew prior to the interview. The plaintiff was among the five individuals ultimately interviewed for the position. The reviewers also selected Andy Hosmer for an interview. Hosmer owned a construction company, held a residential builder's license, and had extensive building experience. The defendant asserts that Mr. Slick had functioned primarily as a grounds worker and had only served as an assistant to Mr. Thomson on minor repairs.

The interviews were conducted on October 26, 2006 by a panel of school officials, comprised of Michael Albright, maintenance supervisor; Timothy Volvosek, High School Assistant Principal; Todd Gentner, school board member; Thomas Salsbury, the Lenawee ISD Director of Operations; and Max Baxter, the interim superintendent. Although Mr. Herrera had left his position as superintendent in August 2006, he continued to perform administrative tasks and the plaintiff claims

that he was present during the plaintiff's interview. The defendant denies that Mr. Herrera had any role in the hiring process or that any members of the panel had discussions with Mr. Herrera concerning their decision.

The interview team members testified that the interviews focused predominantly on the applicant's skills and familiarity with repair work, electrical work, construction, and plumbing. *See, e.g.*, Mot. for Summ. J., Ex. 4, dep. of Max Baxter, at 52-53; Mot. for Summ. J., Ex. 9, aff. of Andy Hosmer, at 4. They assert that the plaintiff's responses to these questions were "poor" and that he appeared nervous. Mot. for Summ. J., Ex. 4, dep. of Max Baxter, at 16. the plaintiff does not refute this statement about the interview or his presentation, but he claims that he became nervous because Mr. Albright informed him that he would have to take another test and Mr. Slick was concerned about the effect that his disability would have on this requirement.

The parties' accounts of the decision-making process differ widely. The defendant claims the that plaintiff's qualifications were far below those of the other applicants', he did not possess the repair skills they required for the position, and he had interviewed poorly. The defendant asserts that the plaintiff was eliminated early in the decision-making process for these reasons. Instead, the top two candidates were Mr. Hosmer and another individual with mechanical experience. Mr. Albright testified that the panel had eliminated Mr. Slick prior to receiving his test scores, *see* Mot. for Summ. J., Ex. 5, dep. of Michael Albright, at 27, but Mr. Baxter admits that "[I]t'd be hard not to take them into consideration because if I remember right, Mike didn't do very well. But I don't know that that had anything to do with the final decision whatsoever," Mot. for Summ. J., Ex.4, dep. of Max Baxter, at 19. The defendant also claims that the decision makers were unaware of the plaintiff's disability during the hiring process.

Mr. Albright says he chose to hire Mr. Hosmer because of his qualifications and his budget experience, and "there wasn't any real disagreement" by the other members of the panel. Mot. for Summ. J., Ex. 5, dep. of Michael Albright, at 32. Hosmer has since completed several large-scale projects for the district, which the district claims has helped it avoid outsourcing this work.

At some point after the interviews had been completed, the plaintiff approached Mr. Albright and Mr. Thomson and "verbally unloaded" on them about the hiring process. Mot. for Summ. J., Ex. 4, dep. of Max Baxter, at 40; Mot. for Summ. J., Ex. 5, dep. of Michael Albright, at 33; Mot. for Summ. J., Ex. 8, dep. of Steve Thomson, at 24. The plaintiff also met with Baxter on October 30, 2006 to ask why he was not hired and whether the board's decision was based on his disability. He informed Baxter at this point that he planned to seek legal recourse.

Baxter claims that he subsequently sought to create a "Grounds and Equipment Maintenance" position, with the plaintiff in mind. This job called for similar qualifications and responsibilities as the "Grounds/Repairperson" position. However, the proposal was rejected by the personnel and financial committees of the school board, which believed that the funds would be better utilized during teacher contract negotiations. After the series of altercations involving the plaintiff and other co-workers, Mr. Baxter stated that he did not believe continuing conversations with the plaintiff would be productive. He testified that "I told both of my supervisors that if they wanted to continue to hire Mike, they had to understand that, in my opinion, he had become a liability in terms of him coming in and saying the things that he said to both Mike Albright and Steve Thompson [sic]." Mot. for Summ. J., Ex. 4, dep. of Max Baxter, at 40.

The plaintiff presents a different understanding of the events at issue. He asserts that Mr. Hosmer and he were the top two applicants and points to the defendants' interview schedule, which

lists the two men with stars by their names. He also cites to the interview ranking sheets and notes that two interviewers allegedly ranked Mr. Slick higher, one even noting that Mr. Hosmer was "unsatisfactory" and commenting "will not hire – too little experience." Ans. to Mot. for Summ. J., Ex. H, Interview Summary Sheets. Other members of the interview team rated the two very close, but gave plaintiff the edge in key respects.

The plaintiff claims that the defendant's emphasis on construction skills was an afterthought, intended to help its position in the litigation. He alleges that the Albright admitted that Mr. Hosmer had presented no experience at all in eight of the eleven posted job responsibilities, including the first seven. The plaintiff claims that he felt discriminated against on the basis of his disability and believed that the panel's action was motivated by discrimination on that basis.

As noted above, the defendant filed a motion for summary judgment contending that the plaintiff has failed to produce evidence to substantiate his claims, and the defendant is entitled to summary judgment as a matter of law. The magistrate judge recommended that the motion be granted.

## II.

The plaintiff objected to the magistrate judge's report on three grounds, all of which have a common basis. First, the plaintiff contends that the magistrate judge failed to view the evidence in the light most favorable to the plaintiff when determining whether the plaintiff established that the defendant's proffered reason for not hiring him for the "Grounds and Repairperson" position was a pretext for discriminating against him due to his disability. Second, the plaintiff argues that the magistrate judge improperly discounted evidence that the second position of "Grounds and Equipment Maintenance" was not authorized by the school board for improper reasons. Third, the

plaintiff contends that the magistrate judge did not review properly the record evidence dealing with whether the defendant's reasons for refusing to recall the plaintiff as a substitute maintenance person was a pretext for discrimination.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

The standards for evaluating a motion for summary judgment are well known but bear repeating here. As the Sixth Circuit recently explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

*Alexander v. CareSource*, 576 F.3d 551, 557 -558 (6th Cir. 2009). In addition, when "'reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.

Rather, the evidence should be viewed in the light most favorable to the non-moving party. . . . Thus, the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)).

The magistrate judge correctly analyzed the ADA and PWDCRA claims in tandem, since the Michigan Act "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002); *see also Monette v. Electronic Data Sys., Inc.*, 90 F.3d 1173, 1177 n.3, 1186 (6th Cir. 1996) (holding that because claims of disability discrimination under Michigan law essentially track those under federal law, resolution of Monette's claim under the ADA also dispensed with his claims under the PWDCRA).

Congress enacted the Americans with Disabilities Act in an effort to "eliminate[] discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The Act prohibits qualifying employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to . . . hiring, advancement or discharge, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). If an employee suffers discrimination because he or she has a disability as defined by the ADA, has a record of having such a disability, or is regarded by his or her employer as having such a disability, 42 U.S.C. § 12102(2), the employee may bring an action seeking various remedies, including damages, provided that the employee first files a timely complaint with the EEOC. 42 U.S.C. §§ 12117, 2000e-5(f)(1). *See Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299 (6th Cir. 2000).

When an employer moves for summary judgment on an ADA claim, an employee must come forward with evidence that demonstrates genuine material fact issues on each of the following elements: (1) the plaintiff is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) his employer performed an adverse employment action against him by reason of her disability. *Williams v. London Utility Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004) (citing *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)).

The magistrate judge concluded that the plaintiff satisfied his burden on the first two elements. The defendant has not objected to the magistrate judge's report. Since the defendant has not objected to those findings, the arguments raised in the summary judgment motion on the basis of those elements are waived, *see Thomas v. Arn*, 474 U.S. 140, 149 (1985) (holding that the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), and the Court agrees that the record supports those findings for the reasons stated by the magistrate judge.

The element of the ADA claim in dispute is whether the record establishes a factual contest on whether the defendant's adverse employment actions were motivated by an unlawful consideration of the plaintiff's learning disability. The plaintiff may prove illegal motive by either direct or circumstantial evidence. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868-69 (6th Cir. 2007); *Kiphart v. Saturn Corp.*, 251 F.3d 573, 581 (6th Cir. 2001). The magistrate judge found that there was not direct evidence, and the plaintiff has not objected to that finding. Therefore, the plaintiff must point to evidence in the record that establishes his circumstantial case.

In the absence of direct evidence of causation, the *McDonnell-Douglas* burden-shifting analysis is used to determine whether adverse employment action is illegally motivated. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981)). Under that construct, the plaintiff first must prove a *prima facie* case. Then the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse action. If the defendant meets that burden, then the plaintiff must offer evidence to create a fact question on whether the defendant's proffered reason is a pretext for discrimination. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004).

The magistrate judge determined – and the parties have not objected to the conclusion – that the plaintiff established his *prima facie* case, and that the defendant offered legitimate, non-discriminatory reasons for the adverse employment actions. The Court agrees and adopts those findings. The magistrate judge also suggested that the plaintiff failed to offer sufficient evidence to create a fact issue on the question of pretext. That is the focus of the plaintiff's objections.

As noted earlier, since this case presently is at the summary judgment stage, the Court views the evidence presented in the light most favorable to the plaintiff. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'"). However, since the plaintiff bears the burden of proof, he must present a jury question as to each element of his claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

In this circuit, a plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was

-12-

insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). A leading Sixth Circuit case, *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir. 1994), provides a thorough gloss on each of these methods of proving pretext. There, the court explained that the first method consists of a challenge to the factual basis for the employer's claim – i.e. "evidence that the proffered bases for the plaintiff's discharge never happened." *Id.* at 1084. When using this method, the plaintiff need not introduce additional evidence of discrimination beyond his *prima facie* case. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). The second method usually encompasses an acknowledgment by the employee that events proffered by the employer actually occurred and that they could justify the adverse action, but it adds the argument that the employer's proffered reason was not the true motivation. "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a . . . coverup." *Manzer*, 29 F.3d at 1084. The third method calls for a comparison of the treatment of similarly situated employees outside the protected group, demonstrating that they "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Ibid.*

The defendant offered as a reason for not hiring the plaintiff for the "Grounds and Repairperson" position that another was more qualified. As the magistrate judge explained, the defendant's representatives stated they were interested in an individual who had experience in the building trades so the district would not have to hire outside contractors to perform building repairs.

The plaintiff alleges that this reason is not the true reason for not hiring the plaintiff, and the true reason is illegal discrimination on the basis of his disability. The defendant alleges that it did not approve the new "Grounds and Equipment Maintenance" position for fiscal reasons, and it did not call the plaintiff in as a substitute maintenance worker because of his volatile behavior that caused concern over the plaintiff's potential contact with students. In his objections, the plaintiff argues that the evidence establishes that these reasons are a pretext for the defendant's retaliation against him for complaining and publically protesting the defendant's failure to hire him for the "Grounds and Repairperson" job. It appears, therefore, that the plaintiff is relying on *Manzer*'s second basis for establishing pretext.

The magistrate judge discussed the record evidence that tended to support the defendant's proffered reason for hiring the competing candidate. The defendant offered evidence in support of its motion that established that the school district had budget problems and an effort was undertaken to reduce costs. The magistrate judge observed that the record supports the plaintiff's claim that he had ample experience in landscaping and maintenance, but it also demonstrated that the plaintiff's experience was lacking in construction and mechanical system repair skills. The plaintiff states that the defendant's interest in a person with construction skills is an afterthought, and that their actual interest can be derived from the job posting, which stressed grounds keeping work and not construction and repair skills. The magistrate judge discounted that argument based on the notion that employers cannot be cabined to a job description when choosing an appropriate employee through a posting and interview process. There is ample authority for that proposition. *See, e.g., Browning v. Dep't of Army*, 436 F.3d 692, 695-96 (6th Cir. 2006); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1297 (D.C. Cir. 1998).

There is other evidence in the record that the magistrate judge did not discuss, however. For instance, the record establishes that the plaintiff was qualified for the job despite his lack of building trades experience. In fact, the magistrate judge found the plaintiff qualified when he determined that the plaintiff made out a *prima facie* case, a conclusion to which the defendant has not objected. In addition, the plaintiff's Exhibit H is the interview checklist sheets completed by the members of the interview team, who evaluated the plaintiff and the candidate who eventually got the job. That evidence shows that school board member Mike Albright rated the other candidate higher in the categories of education, expression, and appearance; but he rated the plaintiff higher in experience, job knowledge, and motivation. Interim superintendent Max Baxter rated the other candidate higher in all categories except motivation. Another board member, Todd Gentner, rated the plaintiff higher in job knowledge and rated the candidates equally in experience. Tom Salsbury also rated the candidates equally in the areas of experience and job knowledge. Tim Volvosek rated the plaintiff higher than the other candidate in experience and job knowledge.

This evidence could cause a fact finder to question whether the successful candidate's superior experience in building and construction was the true reason for selecting him over the plaintiff. Mike Albright testified at his deposition that the other candidate interviewed much better and impressed the interview team with his extensive knowledge and experience in construction, which was an area "critical" to the district. However, Albright actually rated the plaintiff higher in experience and job knowledge. In fact, no one on the team rated the successful candidate higher in those areas except Max Baxter. This evidence is not conclusive or even compelling. However, it does provide a basis for a reasonable fact finder to infer that the defendant's stated reason for not hiring the plaintiff was not its true reason. A jury could, but would not be required to, draw that

inference. Nonetheless, at the summary judgment stage, the Court draw it. *Rodgers*, 344 F.3d 587, 595 (6th Cir. 2003) (holding that a court must "'draw all reasonable inferences . . . in a light most favorable to the non-moving party'"). The Court concludes, therefore, that the plaintiff has presented a triable issue on the question whether the defendant's failure to hire him was based on his disability.

The other instances of adverse action by the defendant present a different question. The plaintiff alleges in his response to the motion for summary judgment and his objection to the magistrate judge's report that the other proposed new job – "Grounds and Equipment Maintenance Person" – and the defendant's failure to call him again as a substitute worker were motivated by protests over not being hired for the "Grounds and Repairperson" position. The ADA does contain a provision that prohibits persons from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the Act. 42 U.S.C. § 12203(a). But the record in this case does not contain evidence that the plaintiff's protests and complaints were tied to his allegation of disability, or that he engaged in protected conduct as defined in the quoted language of the statute. As a public entity, the defendant would not be allowed to retaliate against the plaintiff for speaking out on a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 146 (1983). However, that claim is not framed by the pleadings. Even if the plaintiff's evidence raised an inference that retaliation motivated the later two adverse actions, he still has not established a violation of the ADA or the Michigan counterpart.

III.

The Court concludes that the magistrate judge did not correctly evaluate the evidence of pretext with respect to the plaintiff's failure-to-hire claim, for which issues of fact preclude summary judgment. However, the Court agrees with the magistrate judge that the plaintiff has not established a violation of the ADA based on the alleged adverse action of withdrawing the maintenance position and not calling the defendant in as a substitute worker.

Accordingly, it is **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation [dkt #31] are **SUSTAINED IN PART**.

It is further **ORDERED** that the report and recommendation [dkt #28] is **REJECTED IN PART**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt #13] is **GRANTED IN PART AND DENIED IN PART**. That part of the plaintiff's complaint alleging retaliation in the form of withdrawing the proposed "Grounds and Equipment Maintenance" position and failing to recall the plaintiff as a substitute worker are **DISMISSED WITH PREJUDICE**

It is further **ORDERED** that the matter is referred to Magistrate Judge R. Steven Whalen under the previous reference order [dkt #2] to ready the matter for trial and to conduct a trial if the parties consent under 28 U.S.C. § 636(c)(1).

                 s/David M. Lawson
                 DAVID M. LAWSON
                 United States District Judge

Dated:   September 30, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2009.

                                    s/Lisa M. Ware
                                    LISA M. WARE